## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

SATCO PRODUCTS, INC.

|  |  |
|---|---|
| *Plaintiff,* | Civil Action No. 6:21-cv-146 |
| v. | **JURY TRIAL DEMANDED** |
| SIGNIFY NORTH AMERICA CORP. and SIGNIFY NETHERLANDS B.V. | |
| *Defendants.* | |

## <u>PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT</u>

Satco Products, Inc. ("Satco") files this Complaint against Defendants Signify North America Corp. ("Signify NA") and Signify Netherlands B.V. ("Signify BV") (collectively, "Signify" or "Defendants") for infringement of U.S. Patent No. 9,732,930 (the "'930 patent"), U.S. Patent No. 10,344,952 (the "'952 patent") and U.S. Patent No. 10,533,712 (the "'712 patent") (collectively, the "Asserted Patents").

## <u>THE PARTIES</u>

1.      Plaintiff Satco is a company organized and existing under the laws of the State of New York with its principal place of business located at 110 Heartland Blvd., Brentwood, New York 11717.

2.      Defendant Signify NA (formerly known as Philips Lighting North America Corporation) is a corporation organized under the laws of Delaware with its principal place of business at 200 Franklin Square Drive, Somerset, New Jersey, 08873 and a regular and established place of business in this District at 1611 Clovis R. Barker Road, San Marcos, Texas 78666. Signify NA is registered to do business in Texas and has a registered agent at Corporation Service Company DBA CSC – Lawyers Inco, located at 211 E. 7th Street, Suite 620, Austin TX 78701.

3.      Defendant Signify BV is a corporation organized under the laws of The Netherlands with its principal place of business at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands. On information and belief, defendant Signify NA is a wholly-owned subsidiary of defendant Signify BV. (*See* Signify Annual Report 2019 (available at:   https://www.signify.com/static/2019/signify-annual-report-2019.pdf) at 104).

4.      On information and belief, defendant Signify BV and its direct and indirect subsidiaries, including defendant Signify NA (collectively, "Signify"), operate, manage and direct the worldwide "Signify" business. Signify makes, sells, and offers for sale LED lighting products throughout the United States, including in the Western District of Texas, under numerous brand names (*see* https://www.signify.com/global/brands).

5.      Signify describes itself as "the world leader in lighting for professionals, consumers and lighting for the Internet of Things." In achieving its self-described market leading position, Signify has focused its business on the sale of LED lighting, which has led to a significant increase in Signify's sales of large-scale professional and consumer lighting products, as well as its overall revenues.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      Upon information and belief, Signify BV is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its intermediaries,

distributors, importers, customers and/or subsidiaries. For example, Signify BV describes itself as "the world leader in lighting" and encompasses more than 13 lighting brands, including brands/subsidiaries having a significant business presence in the United States. (*See*, *e.g.*, Signify Annual Report 2019 (available at: https://www.signify.com/static/2019/signify-annual-report-2019.pdf) at 29, 98).  As of 2019, Signify had 2,056 full time employees and 7 manufacturing sites in the United States.  *Id.*

8.     This Court has personal jurisdiction over Signify BV, directly and through intermediaries, distributors, importers, customers, and/or subsidiaries, including its U.S. based, wholly-owned subsidiaries such as Signify NA. Both by itself and through the direction and control of its subsidiaries, Signify BV has committed acts of direct and indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this Action and/or has established minimum contacts with Texas such that personal jurisdiction over Signify BV would not offend traditional notions of fair play and substantial justice.

9.     Signify NA is a wholly owned subsidiary of Signify BV. (*See* Signify Annual Report 2019 (available at: https://www.signify.com/static/2019/signify-annual-report-2019.pdf) at 104). Signify BV describes the Philips brand, which is sold by Signify NA throughout the United States, as "our global brand in professional and consumer lighting." (*See, e.g.,* https://www.signify.com/global/brands). Upon information and belief, Signify BV compensates Signify NA for its manufacturing, use, sales, offers for sale, and importation of lighting products in the United States. As such, Signify BV has a direct financial interest in Signify NA.

10.     Signify BV and Signify NA each manufactures, uses, offers for sale, sells, and/or imports the following products which infringe one or more claims of the '930 and '712 patents: Signify LED lamps and other lighting products that comprise LED filaments, including, but not limited to: Philips LED filament bulbs, candles, globes, decorative and vintage lamp products, such as the Philips

MasterClass and CorePro LED A-shape LED bulb, LED lamp, LED candle, LED globe and LED designer decorative lamp products (*see* https://www.assets.signify.com/is/content/Signify/Assets/philips-lighting/united-states/20200929-led-product-catalog-q3.pdf at 26-28, 34-40); Philips LED Classic Glass Amber BA11 Dimmable Light Bulbs; Philips LED 536532 Dimmable A19 Clear X-Filament Glass Light Bulbs with Warm Glow; Philips LED Dimmable T10 Vintage Bulbs; Philips LED 543165 Bulbs, including the A15 Dimmable LED; Philips 549493 Dimmable Bulbs; Philips Smart Wi-Fi LED filament bulbs; Philips Hue LED filament bulbs and globes; and all other similar Philips LED lighting products and corresponding product and model numbers (collectively, the "Accused LED Filament Products").

11.     Signify BV and Signify NA each manufactures, uses, offers for sale, sells, and/or imports the following products which infringe one or more claims of the '952 patent:  Series MG3R, including the Mini gimbal 3-inch round, the L3RG round gimbal, the L3RD round downlight, and all other similar Philips gimbal and downlight lighting products (collectively, the "Accused Gimbal Products").

12.     Upon information and belief, Signify BV directs or controls and authorizes all activities of Signify NA, including Signify NA's manufacturing, using, offering for sale, selling, and/or importing the Accused LED Filament Products and the Accused Gimbal Products (collectively, the "Accused Products"), or other products that incorporate the fundamental technologies covered by the Asserted Patents. Signify NA is authorized to manufacture, use, import, sell, or offer for sale the Accused Products on behalf of its controlling parent Signify BV. Thus, Signify NA conducts infringing activities on behalf of Signify BV.

13.     Upon information and belief, Signify NA's corporate presence in the United States

provides Signify BV with substantially all the business advantages that it would otherwise enjoy if it conducted its business there through its own offices or paid agents. As discussed in the preceding paragraph, upon information and belief, Signify NA is authorized to manufacture, use, import, sell, and offer for sale Signify BV's Accused Products on behalf of Signify BV.  For example, Signify NA operates within Signify BV's global network of sales subsidiaries in North and South America, Europe, Asia, Africa, and the Middle East. As a result, Signify's Accused Products are imported, distributed, sold and offered for sale in the United States, including within the Western District of Texas.

14.    Through Signify BV's intermediaries, distributors, importers, customers, and/or subsidiaries maintaining a business presence in, operating in, and/or residing in the United States, including but not limited to Signify NA, Signify's products, including the Accused Products, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district.

15.    Upon information and belief, Signify BV has placed and continues to place the Accused Products into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as Signify NA, and customers, with the knowledge and/or intent that those products are and/or will be manufactured, imported, used, offered for sale, and sold in the United States and Texas, including in this judicial district. For example, in 2019, Signify reported 6.24 billion Euro in world-wide sales, of which 1.32 billion Euro came from the United States.  (*See* Signify Annual Report 2019 (available at: https://www.signify.com/static/2019/signify-annual-report-2019.pdf) at 25).

16.    In the alternative, the Court has personal jurisdiction over Signify BV under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Signify BV is not subject to the jurisdiction of the courts of general jurisdiction of any

state, and exercising jurisdiction over Signify BV is consistent with the United States Constitution.

17.     Venue is proper in this judicial district as to Signify BV pursuant to 28 U.S.C. § 1391 because, among other reasons, Signify BV is not a resident in the United States and, thus, may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

18.     On information and belief, Signify NA is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from the Accused Products manufactured, imported, used, offered for sale, and sold to Texas residents. Signify NA has conducted and regularly conducts business within the United States and this District. Signify NA has purposefully availed itself of the privileges of conducting business in the United States and, more specifically, in Texas and this District. Signify NA has sought protection and benefit from the laws of the State of Texas by placing the Accused Products into the stream of commerce through an established distribution channel with awareness and/or intent that they will be purchased by consumers in this District.

19.     Venue is proper in this district as to Signify NA under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, Signify NA has a regular and established place of business in this District, including at least at 1611 Clovis R. Barker Road, San Marcos, Texas 78666.  Signify NA has previously not contested venue in this District, including in at least *TBL Holdings LLC v. Signify North America Corp.*, No. 6:19-cv-00038-ADA.

## THE ASSERTED PATENTS AND TECHNOLOGY

20.     The inventions of the '930 and '712 patents were conceived by employees of Panasonic

Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. For example, Panasonic made numerous innovations in the lighting, home appliance, and television industries. Indeed, Panasonic was involved with the development of: a 2-way socket (1918); the first key socket (1929); the first round fluorescent lamp (1957); a multi-halogen lamp (1966); a high-voltage sodium light (1969); the "Palook" fluorescent light (1977); the first "light capsule" light bulb socket type fluorescent light (1980); a neodymium light bulb (1990); the Palook ball compact fluorescent light bulb (1993); a double ring fluorescent lamp (1997); the world's first full-HD 3D compatible TV (2010); and 4K televisions (2013). Indeed, a search of the USPTO database for all patents assigned to "Panasonic" yields over 27,000 matches.

21.     The '930 patent, entitled "Light bulb shaped lamp," issued on August 15, 2017. A copy of the '930 patent is attached as Exhibit 1. Plaintiff is the assignee of all rights, title, and interests in and to the '930 patent and holds the right to sue and recover for past, present, and future infringement thereof.

22.     The '930 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '930 patent issued from U.S. Patent Application No. 13/394,205.

23.     The '930 patent is generally directed to LED light bulbs that have a higher efficiency and longer lifetime than incandescent light bulbs. In particular, the LED light bulbs of the '930 patent comprise, *inter alia*: a base board; LED chips mounted on a base board, which are encased in a sealing material (e.g., a yellow phosphor); power supply leads for supplying power to the LEDS; and a globe for housing the base board, the LEDs, and the power supply leads. *See*, *e.g*., Figs. 1 and 2B:



24. The '712 patent, entitled "Light bulb shaped lamp," issued on January 14, 2020. A copy of the '712 patent is attached as Exhibit 2. Plaintiff is the assignee of all rights, title, and interests in and to the '712 patent and holds the right to sue and recover for past, present, and future infringement thereof.

25. The '712 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '712 patent issued from U.S. Patent Application No. 15/639,474.

26. The '712 patent, like the '930 patent, is generally directed to LED light bulbs that have a higher efficiency and longer lifetime than incandescent light bulbs. In particular, the LED light bulbs of the '712 patent comprise, *inter alia*, a base board; LED chips mounted on a base board, which are encased in a sealing material (e.g., a yellow phosphor); power supply leads for supplying power to the LEDS; and a globe for housing the base board, the LEDs, and the power supply leads.

27. Signify manufactures, uses, sells, offers for sale and/or imports the Accused LED Filament Products, which include LED lamps and lighting products having LED filament (i.e., LED chips mounted on a baseboard and encased in a sealing material, e.g., a yellow phosphor). Upon

information and belief, a significant portion of Signify's revenue is derived from the manufacture and sale of the Accused LED Filament Products. Signify advertises the Accused LED Filament Products as having the "longest lifetime," "high performance dimming," low maintenance costs, and "huge energy savings when compared to incandescent" bulbs:




**LED bulbs**

# CorePro LED A-shape bulbs

## The affordable LED bulb solution

**CorePro LED bulbs are compatible with existing fixtures and are designed for retrofit replacement of incandescent bulbs.** They deliver energy savings and minimize maintenance cost. The CorePro LED bulbs are perfect for basic lighting needs. It provides the dependable performance you expect from LED at an affordable price.

## CorePro LED A-shape (1 of 2)



A     B     C     D     E     F     G     H

**LED candles & deco**

# MasterClass LED globes

**Philips LED G25 globes are designed to radiate a brilliant light. Filament models offers a light quality that provides consistency in color from any angle.** Perfect for vanities, pendant and other decorative locations.

**Product features:**

· Lowers maintenance costs
  by reducing re-lamp frequency

· Contains no mercury

· Up to 90 CRI options available

## MasterClass LED G25 globes



A     B     C

# **CorePro** LED globes

**CorePro LED decorative lamps are ideal
for locations that need the little bit of sparkle.**

**Product features:**

- Huge energy savings when
  compared to incandescent

## **CorePro** LED G25 globes



A     B     C     D     E

---

# **MasterClass** LED designer decorative lamps

**LED candles & deco**

**Philips designer decorative LED lamps transform your
facility with a perfect blend of warm white light or a
modern, cool lighting experience.** With very long lifetime,
up to 90% energy savings, this lamp as a fixture approach,
will also evenly distribute light with trendy and stylish
charm for a welcoming space.

**Product features:**

- Long lifetime that reduces
  the need for replacement
- Easy replacement of classic conventional
  lamp with the added value of a fixture
- Perfect fit and high quality finishing
- Increased energy savings
  when compared to traditional
  incandescent lamps

## **MasterClass** LED designer decorative lamps



A   B   C   D    E     F     G   H   I    J     K

(*See,  e.g.,*  https://www.assets.signify.com/is/content/Signify/Assets/philips-lighting/united-states/20200929-led-product-catalog-q3.pdf at 26-28, 34-40).

28.     For example, upon information and belief, the Accused LED Filament Products comprise Signify LED lamps and other lighting products having LED filament that are made, used, imported, offered for sale and/or sold in the United States, and which meet each and every limitation of at least one claim of each of the '930 and '712 patents.

29.     The inventions of the '952 patent were conceived by employees of Lotus Lights LED ("Lotus Lights"). Founded in 2008, Lotus Lights is well-known for its state of the art thin recessed LED lighting fixtures.

30.     The '952 patent, entitled "Recessed light-emitting diode lighting fixture," issued on July 9, 2019. A copy of the '952 patent is attached as Exhibit 3. Plaintiff is the assignee of all rights, title, and interests in and to the '952 patent and holds the right to sue and recover for past, present, and future infringement thereof.

31.     The '952 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '952 patent issued from U.S. Patent Application No. 15/604,577.

32.     The '952 patent is generally directed to recessed lighting fixtures with an annular body that prevents airflow through the ceiling. In particular, the recessed lighting fixtures of the '952 patent comprise, *inter alia*: a central cavity in the form of a partially spherical socket; a lighting support member having a partially spherical exterior portion which fits within the partially spherical socket of the annular body and is pivotable relative to the annular body; and an O-ring that restricts air flow between the partially spherical socket and the lighting support member.  *See*, *e.g.*, Figs. 11 and 3:



**FIG. 11**



**FIG. 3**

33.     Signify manufactures, uses, sells, offers for sale and/or imports the Accused Gimbal

Products, which include LED lamps and lighting products having a central cavity in the form of a

partially spherical socket; a lighting support member having a partially spherical exterior portion which

fits within the partially spherical socket of the annular body and is pivotable relative to the annular

body; and an O-ring that restricts air flow between the partially spherical socket and the lighting support member.  Upon information and belief, a significant portion of Signify's revenue is derived from the manufacture and sale of the Accused Gimbal Products. Signify advertises the Accused Gimbal Products as having AirSeal® for minimal air leakage and being airtight:




*See*  https://www.signify.com/api/assets/v1/file/content/88b10439ce6147c4ac83aa5500d1c7a7/Mini-Gimbal-MG-US.pdf.

34.     For example, upon information and belief, the Accused Gimbal Products comprise Signify gimbal and downlight lighting products with AirSeal that are made, used, imported, offered for sale and/or sold in the United States, and which meet each and every limitation of at least one claim of the '952 patent.

**COUNT I**
(INFRINGEMENT OF U.S. PATENT NO. 9,732,930)

35.     Plaintiff repeats and realleges paragraphs 1- 34 as if fully set forth at length herein.

36.     Signify has and continues to directly infringe one or more claims of the '930 patent in this judicial district and elsewhere in Texas and the United States.

37.     Upon information and belief, Signify makes, uses, sells, offers for sale, and/or imports into the United States the Accused LED Filament Products.

38.     Signify directly infringes the '930 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused LED Filament Products in the United States.

39.     For example, Signify directly infringes at least Claim 1 of the '930 patent, literally and/or under the doctrine of equivalents, through its making, using, offering for sale, selling, and/or importing the Accused LED Filament Products.

40.     Claim 1 of the '930 patent recites:

A light bulb shaped lamp, comprising:

a globe;

a base board which is tabular and housed in said globe, the base board having a first surface and a second surface;

a plurality of LED chips mounted in a straight-line row on said base board;

a single continuous sealing material on said first surface of said base board and covering said row of said plurality of LED chips;

a second sealing material on said second surface of said base board, opposing said first surface of said base board,

a base for receiving power from outside; and

at least two power-supply leads for supplying power to said plurality of LED chips,

wherein

said base board is translucent and is supported by said at least two power-supply leads,

each of said two power-supply leads is extended from a side of said base toward inside of said globe and is connected to an end of said base board,

said plurality of LED chips are electrically connected to a first power supply terminal provided at a portion at which one of said two power-supply leads and said base board are connected, and a second power supply terminal provided at a portion at which the other of said two power-supply leads and said base board are connected,

15

the single continuous sealing material is viewable from the outside of the globe, and

the single continuous sealing material includes a wavelength conversion material, extends along a straight-line direction in which said row of said plurality of LED chips are aligned, and is configured in a semi-cylindrical straight-line shape connecting said LED chips.

41.     As one non-limiting example of said infringement, on information and belief, the

Philips LED 543165 Bulb, including the A15 Dimmable LED (the "A15 Dimmable LED"), is a

light bulb shaped lamp, as shown below:



42.     On information and belief, the A15 Dimmable LED comprises a globe, as shown

below:



43.     On information and belief, the A15 Dimmable LED comprises a base board which is tabular and housed in the globe, the base board having a first surface and a second surface, as shown below:




44.     On information and belief, the A15 Dimmable LED comprises a plurality of LED chips mounted in a straight-line row on the base board, as shown below:



45.     On information and belief, the A15 Dimmable LED comprises a single continuous sealing material on the first surface of the base board and covering the row of the plurality of LED chips, as shown below:



46.     On information and belief, the A15 Dimmable LED comprises a second sealing material on the second surface of the base board, opposing the first surface of the base board, as shown below:



47.     On information and belief, the A15 Dimmable LED comprises a base for receiving power from outside, as shown below:



48.     On information and belief, the A15 Dimmable LED comprises at least two power-supply leads for supplying power to the plurality of LED chips, as shown below:

 

49.     On information and belief, the A15 Dimmable LED comprises a base board that is translucent and is supported by at least two power-supply leads, as shown below:



50.     On information and belief, the A15 Dimmable LED comprises two power-supply leads extended from a side of the base toward inside of the globe and connected to an end of the base board, as shown below:



51.     On information and belief, the A15 Dimmable LED comprises a plurality of LED chips that are electrically connected to a first power supply terminal provided at a portion at which one of the two power-supply leads and the base board are connected, and a second power supply terminal provided at a portion at which the other of the two power-supply leads and the base board are connected, as shown below:



52.    On information and belief, the A15 Dimmable LED comprises a single continuous sealing material that is viewable from the outside of the globe, as shown below:



53.     On information and belief, the A15 Dimmable LED comprises a single continuous sealing material which includes a wavelength conversion material, extends along a straight-line direction in which the row of the plurality of LED chips are aligned, and is configured in a semi-cylindrical straight-line shape connecting the LED chips, as shown below:



54.     The full extent of Signify's infringement is not presently known to Plaintiff. On information and belief, Signify has made, used, sold, offered for sale, and/or imported products under different names or part numbers that infringe the '930 patent in a similar manner. Plaintiff makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and/or revise its identification based on additional information obtained through discovery or otherwise.

55.     On information and belief, Signify has known of the '930 patent since at least as early as the service date of this Complaint.

56.     Upon information and belief, since at least the above-mentioned date when Signify was on notice of its infringement, Signify has actively induced, under U.S.C. § 271(b), its distributors

and/or customers that use, sell, offer for sale and/or import the Accused LED Filament Products that include all of the limitations of one or more claims of the '930 patent to directly infringe one or more claims of the '930 patent, with knowledge, and/or with willful blindness of the fact, that the induced acts constitute infringement of the '930 patent. Signify's distributors, customers and/or end users have directly infringed and are directly infringing, either literally and/or under the doctrine of equivalents, the inventions claimed in the '930 patent through their selling, offering for sale, importing and/or using the Accused LED Filament Products. Signify induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused LED Filament Products, and providing technical guides, product data sheets, demonstrations, advertisements, installation guides, and other forms of support that induce their distributors, customers, and/or end users to directly infringe the '930 patent. The Accused LED Filament Products are designed in such a way that when they are used for their intended purpose, the user infringes the '930 patent. Signify knows and intends that its distributors, customers, and/or end users that purchase the Accused LED Filament Products will use those products for their intended purpose.

57.     Signify is, thus, at minimum, liable to Plaintiff in an amount that adequately compensates Plaintiff for Signify's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 10,533,712)

58.     Plaintiff repeats and realleges paragraphs 1- 57 as if fully set forth at length herein.

59.     Signify has and continues to directly infringe one or more claims of the '712 patent in this judicial district and elsewhere in Texas and the United States.

60.     Upon information and belief, Signify makes, uses, sells, offers for sale, and/or imports into the United States the Accused LED Filament Products.

61.     Signify directly infringes the '712 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused LED Filament Products in the United States.

62.     For example, Signify directly infringes at least Claim 17 of the '712 patent, literally and/or under the doctrine of equivalents, through its making, using, offering for sale, selling, and/or importing the Accused LED Filament Products.

63.     Claim 17 of the '712 patent recites:

A light emitting module comprising:

an elongated base board having a first end and a second end at opposed ends of a longitudinal direction of the base board, a first surface and a second surface opposing the first surface;

first and second conductive members provided at the first end and the second end on the first surface of the base board, and extending beyond the first and second ends of base board in the longitudinal direction of the base board;

first and second power supply terminals respectively provided at the first end and the second end of the base board, and extending transverse to the longitudinal direction of the base board, the first and second power supply terminal electrically connected to the first and second conductive members, respectively;

a plurality of light-emitting diodes provided on the first surface of the base board, arranged in a line parallel to the longitudinal direction of the base board and between the first conductive member and the second conductive member; and

wires that connect the light-emitting diodes in series, each of the wires extending in the longitudinal direction of the base board to connect one of the plurality of light-emitting diodes to an adjacent one of the plurality of light-emitting diodes;

end wires that connect longitudinal extremities of the plurality of light-emitting diodes to the first and second conductive members; and

an elongated seal including a wavelength conversion material, the elongated seal enclosing all of the plurality of light-emitting diodes and enclosing the entire base board, and enclosing the wires extending in the longitudinal direction of the base board,

wherein the light emitting module has an elongated shape,

the elongated seal enclosing the entire base board contacts all of the plurality of light-emitting diodes, and

a cross-section of the elongated seal above the base board, which encloses the wires extending in the longitudinal direction of the base board, has a semicircular shape that is uniform along a longitudinal direction of the base board.

64.     As one non-limiting example of said infringement, on information and belief, the A15 Dimmable LED comprises a light emitting module, as shown below:



65.     On information and belief, the A15 Dimmable LED comprises an elongated base board having a first end and a second end at opposed ends of a longitudinal direction of the base board, and a first surface and a second surface opposing the first surface, as shown below:





66.    On information and belief, the A15 Dimmable LED comprises first and second conductive members provided at the first end and the second end on the first surface of the base board, and extending beyond the first and second ends of base board in the longitudinal direction of the base board, as shown below:



67.    On information and belief, the A15 Dimmable LED comprises first and second power supply terminals respectively provided at the first end and the second end of the base board, and extending transverse to the longitudinal direction of the base board, the first and second power supply terminal electrically connected to the first and second conductive members, respectively, as shown

below:



68.     On information and belief, the A15 Dimmable LED comprises a plurality of light-emitting diodes provided on the first surface of the base board, arranged in a line parallel to the longitudinal direction of the base board and between the first conductive member and the second conductive member, as shown below:



69.     On information and belief, the A15 Dimmable LED comprises wires that connect the light-emitting diodes in series, each of the wires extending in the longitudinal direction of the base board to connect one of the plurality of light-emitting diodes to an adjacent one of the plurality of light-emitting diodes, as shown below:



70.    On information and belief, the A15 Dimmable LED comprises end wires that connect longitudinal extremities of the plurality of light-emitting diodes to the first and second conductive members, as shown below:



71.     On information and belief, the A15 Dimmable LED comprises an elongated seal including a wavelength conversion material, the elongated seal enclosing all of the plurality of light-emitting diodes and enclosing the entire base board, and enclosing the wires extending in the longitudinal direction of the base board, as shown below:

 

72.     On information and belief, the A15 Dimmable LED comprises a light emitting module that has an  elongated shape, as shown below:

 

73.     On information and belief, the A15 Dimmable LED comprises an elongated seal that

encloses the entire base board and contacts all of the plurality of light-emitting diodes, as shown below:

 

74.     On information and belief, the A15 Dimmable LED comprises an elongated seal,

wherein a cross-section of the elongated seal above the baseboard, which encloses the wires extending

in the longitudinal direction of the base board, has a semicircular shape that is uniform along a

longitudinal direction of the base board, as shown below:

 

75.     The full extent of Signify's infringement is not presently known to Plaintiff.   On information and belief, Signify has made, used, sold, offered for sale, and/or imported products under different names or part numbers that infringe the '712 patent in a similar manner. Plaintiff makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identification based on additional information obtained through discovery or otherwise.

76.     On information and belief, Signify has known of the '712 patent at least as early as the service date of this Complaint.

77.     Upon information and belief, since at least the above-mentioned date when Signify was on notice of its infringement, Signify has actively induced, under U.S.C. § 271(b), its distributors and/or customers that use, sell, offer for sale and/or import the Accused LED Filament Products that include all of the limitations of one or more claims of the '712 patent to directly infringe one or more claims of the '712 patent, with knowledge, and/or with willful blindness of the fact, that the induced acts constitute infringement of the '712 patent. Signify's distributors, customers and/or end users have directly infringed and are directly infringing, either literally and/or under the doctrine of equivalents, the inventions claimed in the '712 patent through their selling, offering for sale, importing and/or using the Accused LED Filament Products. Signify induces this direct infringement through its affirmative

acts of manufacturing, selling, distributing, and/or otherwise making available the Accused LED Filament Products, and providing technical guides, product data sheets, demonstrations, advertisements, installation guides, and other forms of support that induce their distributors, customers, and/or end users to directly infringe the '712 patent. The Accused LED Filament Products are designed in such a way that when they are used for their intended purpose, the user infringes the '712 patent. Signify knows and intends that its distributors, customers, and/or end users that purchase the Accused LED Filament Products will use those products for their intended purpose.

78.    Signify is, thus, at minimum, liable to Plaintiff in an amount that adequately compensates Plaintiff for Signify's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **COUNT III**
### (INFRINGEMENT OF U.S. PATENT NO. 10,344,952)

79.    Plaintiff repeats and realleges paragraphs 1- 78 as if fully set forth at length herein.

80.    Signify has and continues to directly infringe one or more claims of the '952 patent in this judicial district and elsewhere in Texas and the United States.

81.    Upon information and belief, Signify makes, uses, sells, offers for sale, and/or imports into the United States the Accused Gimbal Products.

82.    Signify directly infringes the '952 patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Gimbal Products in the United States.

83.    For example, Signify directly infringes at least Claim 1 of the '952 patent, literally and/or under the doctrine of equivalents, through its making, using, offering for sale, selling, and/or importing the Accused Gimbal Products.

84.    Claim 1 of the '952 patent recites:

A recessed lighting fixture comprising:

a generally annular body having a central cavity in the form of a partially spherical socket;

a lighting support member having a partially spherical exterior portion fitted within the partially spherical socket of the annular body; and

an O-ring sealingly disposed between the partially spherical exterior portion of the lighting support member and the partially spherical socket of the annular body, whereby the lighting support member is pivotable relative to the annular body, but air flow between the partially spherical socket of the annular body, the partially spherical exterior portion of the lighting support member, and a ceiling is substantially restricted.

85.     As one non-limiting example of said infringement, on information and belief, the Philips Mini Gimbal Downlight, including the MG3R series (the "Mini Gimbal"), is a recessed lighting fixture, as shown below:






86.     On information and belief, the Mini Gimbal comprises a generally annular body having a central cavity in the form of a partially spherical socket, as shown below:



87.     On information and belief, the Mini Gimbal comprises a lighting support member having a partially spherical exterior portion fitted within the partially spherical socket of the annular body, as shown below:






88.     On information and belief, the Mini Gimbal comprises an O-ring sealingly disposed between the partially spherical exterior portion of the lighting support member and the partially spherical socket of the annular body, whereby the lighting support member is pivotable relative to the annular body, but air flow between the partially spherical socket of the annular body, the partially spherical exterior portion of the lighting support member, and the ceiling is substantially restricted, as shown below:











89.     The full extent of Signify's infringement is not presently known to Plaintiff.   On information and belief, Signify has made, used, sold, offered for sale, and/or imported products under different names or part numbers that infringe the '952 patent in a similar manner. Plaintiff makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and/or revise its identification based on additional information obtained through discovery or otherwise.

90.     On information and belief, Signify has known of the '952 patent since at least as early as the service date of this Complaint.

91.     Upon information and belief, since at least the above-mentioned date when Signify was on notice of its infringement, Signify has actively induced, under U.S.C. § 271(b), its distributors and/or customers that use, sell, offer for sale and/or import the Accused Gimbal Products that include all of the limitations of one or more claims of the '952 patent to directly infringe one or more claims of the '952 patent, with knowledge, and/or with willful blindness of the fact, that the induced acts constitute infringement of the '952 patent. Signify's distributors, customers and/or end users have directly infringed and are directly infringing, either literally and/or under the doctrine of equivalents,

the inventions claimed in the '952 patent through their selling, offering for sale, importing and/or using the Accused Gimbal Products. Signify induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Gimbal Products, and providing technical guides, product data sheets, demonstrations, advertisements, installation guides, and other forms of support that induce their distributors, customers, and/or end users to directly infringe the '952 patent. The Accused Gimbal Products are designed in such a way that when they are used for their intended purpose, the user infringes the '952 patent. Signify knows and intends that its distributors, customers, and/or end users that purchase the Accused Gimbal Products will use those products for their intended purpose.

92.     Signify is, thus, at minimum, liable to Plaintiff in an amount that adequately compensates Plaintiff for Signify's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

93.     Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

94.     Plaintiff respectfully requests that the Court find in its favor and against Signify and that the Court grant Plaintiff the following relief:

    a.  A judgment that Signify has directly infringed the Asserted Patents as alleged herein;

    b.  A judgment that Signify has indirectly infringed the Asserted Patents as alleged herein;

    c.  A judgment for an accounting of all damages, past and future, including lost profits, sustained by Plaintiff as a result of the acts of infringement by Signify;

    d.  A judgment and order requiring Signify to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties

determined to be appropriate;

e.   A judgment and order requiring Signify to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

f.   A judgment and order finding this to be an exceptional case and requiring Signify to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

g.   Such other and further relief as the Court deems just and equitable.

Dated: February 12, 2021                          Respectfully submitted,

By: */s/  Janis E. Clements*
Janis E. Clements
Texas Bar. No. 04365500
GREENBERG TRAURIG, LLP
300 West 6th Street
Suite 2050
Austin, TX 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210
Email: clementsj@gtlaw.com

Scott Bornstein (*pro hac vice* forthcoming)
Joshua L. Raskin (*pro hac vice* forthcoming)
Jonathan Ball (*pro hac vice* forthcoming)
Jeffrey R. Colin (*pro hac vice* forthcoming)
Margaret K. Ukwu (*pro hac vice* forthcoming)
Sandra L. Applebaum (*pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: bornsteins@gtlaw.com
Email: raskinj@gtlaw.com
Email:  ballj@gtlaw.com
Email: colinj@gtlaw.com
Email: ukwum@gtlaw.com
Email: applebaums@gtlaw.com

Nicholas Brown  (*pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
4 Embarcadero Center
Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010
Email: brownn@gtlaw.com

Robert P. Lynn, Jr.  (*pro hac vice* forthcoming)
Stephen W. Livingston (*pro hac vice* forthcoming)
LYNN GARTNER DUNNE, LLP
330 Old Country Road, Suite 103
Mineola, New York 11501
Telephone: (516) 742-6200
Email: rplynn@lgdlaw.com
Email: swlivingston@lgdlaw.com

***Attorneys for Plaintiff Satco Products, Inc.***